UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A&D TECHNOLOGY, INC., a
a Michigan corporation,

               Plaintiff,                CASE NUMBER: 09-11662
                                         HONORABLE VICTORIA A. ROBERTS

v.

C.E.E., LLC, a California limited liability
company,

               Defendant.
_____/

## ORDER DENYING DEFENDANT'S AMENDED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE, FOR TRANSFER OF VENUE OR STAY OR PROCEEDINGS

**I.**    **INTRODUCTION**

Plaintiff A&D Technology, Inc. ("A&D") sued C.E.E., LLC ("CEE"), asserting

claims against CEE for breach of two contracts and unjust enrichment.  Defendant CEE

moves to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal

jurisdiction.  In the alternative, Defendant asks the Court to transfer the action to the

United States District Court for the Central District of California pursuant to 28 U.S.C. §

1404(a), or to stay these proceedings pending the resolution of a parallel action pending

in the Central District of California.  Oral argument was held on August 4, 2008.  For the

following reasons, Defendant's motion is **DENIED**.

## II. BACKGROUND

Plaintiff A&D Technology, Inc. (A&D) is a Michigan corporation in the business of "designing, constructing, and installing engine testing software and equipment and related projects."  Defendant CEE is a California LLC that operates as a vehicle and engine testing facility.

This action arises out of the alleged breach of two contracts between the Parties. The first contract concerned the sale and installation of a "Test Cell" by A&D to CEE. On August 22, 2007 A&D submitted to CEE the Heavy Duty Transient Test Cell Proposal, and on August 23, CEE responded by submitting to A&D the Test Cell Purchase Order for two Test Cells at a base price of $500,000.  The Proposal and Purchase Order comprise the first disputed contract.

The second contract concerned the sale by A&D to CEE of a "Dynamometer." On October 9, 2007 A&D sent CEE the Dynamometer Proposal, and on October 10 CEE sent A&D the Dynamometer Purchase Order for one Dynamometer at a base price of $210,000.  The Dynamometer Proposal and Dynamometer Purchase order comprise the second disputed contract.

### A.    Disputed Facts

At the heart of this motion are the events leading up to the consummation of the two contracts by the parties. There is considerable factual dispute between the parties on two issues pertinent to the jurisdictional question: (1) the details of the contractual negotiations, including who initiated contact and where negotiations took place; and (2) the general extent to which CEE conducts business in Michigan.  The parties attached

2

declarations and affidavits to their motion papers which set forth a conflicting picture of the facts.

Plaintiff A&D contends that CEE conducted business in the past in Michigan and continues to conduct business in Michigan.  In support, A&D attaches an Executive Summary prepared by CEE for a client during the time period in question in which CEE holds itself out as having "Michigan Operations" and a "director" of its Michigan Operations.  (Pl.'s Br. Opp'n Ex. 1.) The Executive Summary indicates that CEE directed tests in Ann Arbor, Michigan.  (*Id.*) A&D also contends that CEE has an ongoing business relationship with a Michigan company, No Canoe, LLC, and attaches an affidavit from No Canoe's owner to that effect.  (*Id.* at Ex. 2.)  Plaintiff further alleges that CEE's website maintains that CEE initiated a working relationship with CTI, whose facilities are in Novi, Michigan (*Id.* at Ex. 3), and that CEE's clients include domestic auto manufacturers, all of which are located in Michigan.  (*Id.* at Ex.'s 9-13.)  A&D alleges that the business card of Ed Ponagai, which identifies him as the Director of CEE's Michigan Operations, is indisputable proof that CEE conducts business in Michigan.  (*Id.* at Ex. 18.)

CEE relies primarily on the Amended and Supplemental Declarations of George Gemayel, President of CEE, which state that CEE has no business presence within Michigan.  (Def's Br. Supp. Ex. A.)  Gemayel further states that CEE does not have a "Michigan Operation," and therefore Ed Ponagai is not the "director" of CEE's non-existent "Michigan Operation."  (Def's Reply Br. Ex 1.)  Rather, Ponagai's "self-delegated title" was unknown to CEE until A&E filed its brief.  (*Id.*)  Ponagai's Declaration states that he is not actually an employee of CEE and that he does not use

3

CEE equipment or services in his work.  (*Id.*at Ex. 3.)  Both Ponagai and CEE claim that Ponagai is merely an independent contractor who occasionally does work on behalf of CEE in Michigan, but is not employed by CEE.  Ponagai also declares that the tests the Executive Summary refers to as having been performed in Ann Arbor, Michigan were not performed under CEE's direction.  (*Id.*)  CEE claims that its relationship with CTI never materialized, despite the post on CEE's website, and that CEE's relationships with domestic automakers are all based in California.  (Def's Br. Supp. Ex. A.)

A&D and CEE also set forth different accounts of the negotiation and consummation of the contracts in question.  CEE alleges that A&D initially solicited CEE's business through in-person sales calls in California (Def's Br. Supp. Ex. A) and offers the declaration of former A&D employee Jeffrey Beebe as proof. (Def's Reply Br. Ex. 2.)  Gemayel's Declaration states that at no point were the contracts negotiated in Michigan or outside California (Def's Br. Supp Ex. A), though CEE admits that some negotiations may have occurred via electronic communications.  (*Id.*at 9)  CEE also alleges that the contracts were consummated in California.

A&D's brief, on the other hand, states: "CEE's employees met with A&D personnel in Michigan as part of CEE's solicitation and negotiation for products and services from A&D."  (Pl.'s Br. Opp'n at 5.)  In direct contradiction to Gemayel's declaration, A&D claims through affidavits that representatives from CEE visited Michigan to engage in business meetings with A&D and to further the negotiations of the contracts.  (*Id.* at Ex. 15,16.)  The affidavit of A&D's controller, Kevin Radcliffe, includes expense reports and receipts from the alleged dinner meetings.  (*Id.* at 15.)

Also, A&D alleges that the Purchases Orders for each of the two contracts were "delivered to A&D at A&D's facility in Ann Arbor, Michigan." (*Id.* at 5.)

### B. Procedural History

On April 1, 2009 A&D filed a Complaint against CEE in Washtenaw County Circuit Court, asserting counts for breach of contract and quantum meruit/unjust enrichment. On April 21, 2009, CEE filed a Complaint against A&D in the United States District Court for the Central District of California, asserting claims for breach of contract, breach of implied warranties for particular purpose and merchantability, negligent misrepresentation, negligent interference with prospective economic advantage, unfair business practices, and unjust enrichment. On May 1, 2009, CEE removed the Washtenaw County action to this Court.

Defendant CEE now moves to dismiss for lack of personal jurisdiction, or, alternatively, to transfer this case to the Central District of California or to stay the proceedings.

### III. ANALYSIS

### A. DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

CEE contends it is not subject to either general or specific jurisdiction in Michigan, and moves pursuant to Fed. R. Civ. P. 12(b)(2) for the Court to dismiss the action.

"In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (*citing Serras v. First Tennessee Bank N.A.*, 875

5

F.2d 1212, 1214 (6th Cir. 1989). When confronted with a properly supported Rule 12(b)(2) motion, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (*citing Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929-30 (6th Cir. 1974)). A court reviewing such a motion may, in its discretion, decide the motion solely upon written submissions and affidavits, allow limited discovery to aid in its decision, or hold an evidentiary hearing to resolve any disputed facts. *Id.* (*citing Serras*, 875 F.2d at 1214). In the absence of an evidentiary hearing, the plaintiff bears only the "relatively slight" burden of making a *prima facie* showing of jurisdiction. *Air Prods.*, 503 F.3d at 549 (*quoting Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Since there has been no evidentiary hearing in this case, the Court must view the pleadings and affidavits in the light most favorable to the plaintiff and may not weigh any controverting assertions submitted by the party seeking dismissal. *Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (*citing CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)); *Theunissen*, 935 F.2d at 1459. The motion may be granted only if "all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe*, 89 F.3d at 1262 (*citing Theunissen*, 935 F.2d at 1459).

The Court held oral arguments on Defendant's motions and finds that certain facts remain in dispute. However, since both parties submitted multiple affidavits in support of their respective position, the Court has sufficient factual background to make a decision based on the pleadings, affidavits, and the arguments. In reaching a

6

decision, the Court reviews the written submissions in the light most favorable to Plaintiff.

### 1.    Jurisdictional Standard

A federal court sitting in diversity may assert personal jurisdiction over a non-resident defendant only to the extent permitted under the law of the forum state. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).  In Michigan, the exercise of personal jurisdiction over a non-resident defendant is proper if (1) the defendant's actions place it within reach of Michigan's long-arm statute, and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution.  *Green v. Wilson,* 455 Mich. 342, 347 (1997).

CEE does not dispute that its activities fall within the reach of Michigan's long-arm statutes, so the only question is whether the exercise of personal jurisdiction over CEE in Michigan violates the Due Process Clause of the Fourteenth Amendment.

### 2.    Due Process Considerations

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).  Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general.  *Air Prods.*, 503 F.3d at 549-50.  A&D asserts both specific jurisdiction and general jurisdiction are present.

### i.    Specific Jurisdiction

The Sixth Circuit applies a three part test to determine whether specific jurisdiction can be exercised over an out-of-state defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods.*, 503 F.3d, at 550 (quoting *S. Mach Co. v. Mohasco Indus., Inc*., 401 F.2d 374, 381 (6th Cir. 1968)).  The finding of the first two elements creates an inference that the third factor is also met. *CompuServe,* 89 F.3d at 1268.  However, "failure to meet any one of the three means that personal jurisdiction may not be invoked."  *LAK, Inc. v. Deer Creek Enter*, 885 F.2d 1293, 1303 (6th Cir. 1989).

### a.    Purposeful Availment

To establish purposeful availment, Plaintiff must show that Defendants had sufficient "minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe,* 326 U.S. at 316 (1945) (*quoting Miliken* 311 U.S. at 463 (1940)).  The purposeful availment requirement ensures that "'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *CompuServe,* 89 F.3d at 1263.  The Supreme Court has often repeated that unilateral actions by a plaintiff claiming a relationship with a non-resident defendant "cannot satisfy the requirement of contact with the forum State."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Nevertheless, purposeful availment does not require that the

8

defendant be physically present in the forum state. *Burger King*, 471 U.S. at 476. Rather, "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475 (emphasis in original) (*citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

The Supreme Court has had several opportunities to discuss the exercise of personal jurisdiction with respect to interstate contractual relations. In *Burger King*, the Court emphasized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." 471 U.S. at 473 (*quoting Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). One contract alone, however, does not automatically establish sufficient minimum contacts in the forum state. *Id.* at 478. The court must also consider other factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479.

Where defendants intentionally enter into a substantial contractual relationship with an individual or entity known to be a resident of the forum state, plaintiffs are protected from assertions that they acted unilaterally. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 228 (6th Cir. 1972)("[T]he purposeful action test is merely a baseline requirement, designed to insure that the defendant has become involved with the forum state through actions freely and intentionally done. It seeks to avoid the assertion of jurisdiction in a situation where all contacts result entirely from a decision made by plaintiff..."); *See also Air Prods.*, 503 F.3d at 551 ("Defendants reached out beyond Kansas' borders to conduct business with a company it knew to be in Michigan.

9

Such contacts are not "random," "fortuitous," or "attenuated," but are the result of deliberate conduct that amounts to purposeful availment.").

Where defendant enters into a substantial business relationship with a resident of the forum state, jurisdiction cannot be avoided merely because the defendant did not *physically* enter the forum state in furtherance of the business relationship.  *Burger King*, 471 U.S. at 476.  In *Burger King*, the Supreme Court held that a district court in Florida had jurisdiction over a Michigan resident, even though the Michigan resident had never been to Florida, had no offices there, and no physical contacts there.  *Id.* at 479-80.  "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."  *Id.* at 476.  The Sixth Circuit has found purposeful availment where a nonresident defendant "transacts business by negotiating and executing a contract via telephone calls and letters to a resident of the forum state."  *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).  So long as the defendant then directs its commercial activities towards residents of the forum state, an absence of physical contacts cannot defeat jurisdiction in the forum.  *Burger King*, 471 U.S. at 476.

"The question of which party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident."  *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 910 (citing *S. Mach.*, 401 F.2d at 382.)  In *Southern Machine*, Southern Machine Company entered into a licensing agreement with Mohasco Industries by which Southern Machine was allowed to sell tufting machine attachments of which Mohasco held the patent.  Southern Machine brought a

10

declaratory judgment action against Mohasco in Tennessee.  Mohasco argued that the district court in Tennessee, Southern Machine's home forum, lacked personal jurisdiction over it because Southern Machine had solicited the licensing agreement from Mohasco at its offices in New York.  In holding that it is immaterial which party solicited the agreement, the court noted that Mohasco still made a purposeful decision to deal with Southern Machine.  *S. Mach.*, 401 F.2d at 382.

In contending that it did not purposefully avail itself of the Michigan forum, CEE relies heavily on the assertion that A&D unilaterally solicited the business of CEE in California.  *Southern Machine,* however, makes clear that the question of which party solicited the business relationship is irrelevant.  401 F. 2d at 382.  Since CEE then directed its activities to the forum resident, corresponding with A&D in Michigan regarding the development of the products, and sending purchase orders to A&D in Michigan, CEE clearly reached out beyond California's borders.

CEE cites language from two cases, *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997), and *Market/Media Research, Inc. v. Union Tribune Publishing Co.*, 951 F.2d 102 (6th Cir. 1992), to support its position that the question of which party first solicited the other's business is a relevant inquiry in the specific jurisdiction analysis.  These cases are distinguishable; the party seeking transfer in each case did not direct its activities toward the forum resident after it received a business solicitation.  In *Kerry Steel*, the buyer did not direct its activities toward the Michigan forum because the subject of the contract in question, steel coil, was picked up by the buyer in Illinois and may never have been located in the Michigan forum.  In *Market/Media Research*, defendant did not direct its activities toward the forum resident

11

because it did not ultimately sign a contract with the forum resident.  Therefore, defendant may not have even "transacted business" within the forum state.

CEE's intentional conduct in entering into the contracts at issue shows that their contacts with Michigan are not "random," "fortuitous," or "attenuated."  CEE deliberately directed its activities toward Michigan to negotiate and complete two contracts for goods and services of substantial value.  Like the companies in *In-Flight* and *Air Products* which reached out beyond their home states to conduct business with a company in another state, CEE cannot now claim that A&D acted unilaterally.

Defendant relies heavily on *Kerry Steel* in arguing that it did not purposefully avail itself of the Michigan forum.  106 F.3d 147.  In *Kerry Steel,* the plaintiff, a Michigan steel service center, initially approached defendant, an Oklahoma pipe fabricator, with an offer to sell it $300,000 worth of steel coils.  The offer was accepted by telephone, and all negotiations were conducted via telephone and facsimile.  The Oklahoma buyer accepted the coils in Illinois, but then refused to pay the full purchase price.  Kerry Steel filed suit in Michigan, and the buyer removed the case to federal court.  In granting the buyer's 12(b)(2) motion to dismiss, the district court held that plaintiff had failed to make out a *prima facie* case that the defendant purposefully availed itself of the Michigan forum.  The court stated: "Paragon has no employees or offices in Michigan, and there has been no showing that any Paragon employee has ever been in Michigan for the purpose of conducting business there." *Id.* at 151.  The court also said: "It is immaterial that Paragon placed telephone calls and sent faxes to Kerry Steel in Michigan."  *Id.*

*Kerry Steel*, however, is readily distinguishable.  The goods at issue in Kerry Steel were located and accepted in Illinois, not Michigan. In explaining the tenuous

12

relationship of the transaction to the Michigan forum, the court stated: "We note also that Kerry Steel has alleged no facts connecting either the subject matter of the contract or its performance to the State of Michigan." *Id.* at 151. Here, the development and manufacture of the test cells and dynamometer all took place at A&D's place of business in Michigan. This development and manufacture of products for CEE was a significant aspect of the performance of the contracts. The contracts between CEE and A&D were not for the mere transfer of goods, as was the case in *Kerry Steel*, but for substantial development and manufacture work to be completed in Michigan. Accordingly, *Kerry Steel* does not control this Court's decision concerning purposeful availment.

Even if the contract negotiations took place via electronic communications, CEE can still be found to have purposefully availed itself of the Michigan forum. If the contracts were negotiated via electronic communication, as CEE allows in its brief, under *Cole v. Mileti*, purposeful availment can still be found. 133 F. 3d at 436 (finding purposeful availment where a defendant negotiated and executed a contract via telephone calls and letters to a resident of the forum state) *See also Burger King*, 471 U.S. at 476; *Am. Greetings*, 839 F.2d at 1170; *In-Flight*, 466 F.2d at 235. Thus, this Court's finding that CEE purposefully availed itself of the Michigan forum does not turn on the disputed question of whether negotiations for the contracts took place at dinner meetings in Michigan.

CEE also purposefully availed itself of the Michigan forum because it created substantial business obligations with A&D, the making or breaking of which would have a substantial impact on the commerce of Michigan. "In [the Sixth Circuit] one has

13

"acted" so as to transact business in a state "when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state." *In-Flight*, 466 F.2d at 226.  The two contracts consummated were for goods and services of substantial value.  The test cells at the center of the first contract were valued at $500,000 and the dynamometer in the second contract was valued at $210,000.  These items were to be developed and manufactured by A&D in Michigan.  These items were to be built to order by A&D and were not stock, off the shelf products.  When CEE entered into these contracts it could not have been ignorant of the substantial consequences they would have on the commerce of Michigan.

For the reasons set forth above, this Court finds that CEE purposefully availed itself of the Michigan forum.

### b.      Claims "arise from" Defendant's Activities in the Forum

Due process mandates that Plaintiffs' claims properly "arise from" the Defendant's in-state actions.  This requirement is met as long as "[D]efendant's contacts with the forum state are related to the operative facts of the controversy." *CompuServe*, 89 F.3d at 1267.  The Sixth Circuit has several times noted that this is a "lenient standard." *Air Prods.*, 503 F.3d at 553; *Bird*, 289 F.3d at 875.  Plaintiff's cause of action need not "formally 'arise from' defendant's contacts with the forum;" instead it suffices that it "have a substantial connection with the defendant's in-state activities." *Third Nat'l Bank v. WEDGE Grp.*, 882 F.2d, 1087, 1091 (6th Cir. 1989); *S. Mach.*, 401 F.2d at 384 n. 27.

The two contracts form the basis of CEE's connection with Michigan, and A&D's claims all relate to these contracts and to the parties' resulting obligations.  "[I]f the

14

cause of action is for breach of th[e] contract [by which the defendant has availed itself of the forum state,] then the cause of action naturally arises from the defendant's activities in [the forum]. *Cole*, 133 F.3d at 436 (*citing CompuServe*, 89 F.3d at 1267; *In-Flight*, 466 F.2d at 229). Accordingly, Plaintiff's claims may properly be said to "arise from" Defendant's in-state activities. *See N. Pointe Dealings*, 2007 U.S. Dist. LEXIS 48103, at *13.

### c.      Reasonable Exercise of Jurisdiction

In the last step of the analysis, the Court must determine whether, on the facts of this case, the exercise of jurisdiction is reasonable. *S. Mach.*, 401 F.2d at 381. Since the "purposeful availment" and "arising from" elements have been met, Defendant's burden is correspondingly increased to rebut this part of the test. *See Air Prods.*, 503 F.3d at 554 ("[W]here, as here, the first two criterion are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'") (*citing Theunissen*, 935 F.2d at 1461); *Cole*, 133 F.3d at 436 ("[W]hen we find that a defendant . . . purposefully availed himself of the forum and that the cause of action arose directly from that contact, we presume the specific assertion of personal jurisdiction was proper) (*citing CompuServe*, 89 F.3d at 1268). The Supreme Court has identified several relevant factors in this inquiry, notably "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies." *Am. Greetings*, 839 F.2d at 1169-1170 (*citing Asahi*, 480 U.S. at 113).

Although it may be a burden on CEE to travel from California for this litigation, Michigan clearly has an interest in protecting a company whose principal place of

15

business is located in Michigan.  Because there is an inference of reasonableness when

the first two *Southern Machine* prongs are satisfied, and because this Court must not

consider any controverting assertions of CEE in deciding this motion without an

evidentiary hearing, the exercise of jurisdiction is reasonable under the circumstances.

### ii.    General Jurisdiction

General jurisdiction is proper only where "a defendant's contacts with the forum

state are of such a continuous and systematic nature that the state may exercise

personal jurisdiction over the defendant even if the action is unrelated to the defendant's

contacts with the state." *WEDGE*, 882 F.2d at 1089.  "Continuous and systematic

contact" is a fairly high standard. *See, e.g., Helicopteros Nacionales*, *S.A. v. Hall*, 466

U.S. 408 (1984) (finding state could not exercise general jurisdiction over defendant

based on one trip to state to negotiate a contract, acceptance of checks drawn from

bank in the state, and purchase of helicopters from manufacturer in the state);

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 794 (6th Cir. 1996) (no

general jurisdiction based only on reinsurance agreements with companies in the forum

state and no employees present there).

Since the Court finds that specific jurisdiction exists, in-depth consideration of

general jurisdiction is not necessary.  In addition, since the facts regarding general

jurisdiction are so heavily disputed, a determination of general jurisdiction may be better

facilitated by an evidentiary hearing.  That said, A&D's assertion that general jurisdiction

exists based on: (1) CEE's relationship with a sub-contractor in Michigan; (2) a business

card and "Executive Summary" which state that CEE has a "Michigan Operations;" and,

(3) postings on CEE's website regarding alleged business activity in Michigan, is

probably not sufficient to establish "systematic and continuous contact."

### B.   DEFENDANT'S MOTION TO TRANSFER VENUE

A court may transfer an action under 28 U.S.C. § 1404(a) as long as "(1) the

action could have been brought in the transferee district court; (2) a transfer serves the

interest of justice; and (3) a transfer is in the convenience of the witnesses and parties."

*Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994).

In analyzing the second and third criteria, courts consider the following factors:

(1) the convenience of witnesses; (2) the location of relevant documents
and relative ease of access to sources of proof; (3) the convenience of the
parties; (4) the locus of the operative facts; (5) the availability of process to
compel the attendance of unwilling witnesses; (6) the relative means of
the parties; (7) the forum's familiarity with the governing law; (8) the weight
accorded the plaintiff's choice of forum; and (9) trial efficiency and the
interests of justice, based on the totality of the circumstances.

*IFL Group v. World Wide Flight Services*, 306 F. Supp. 2d 709, 712 (E.D. Mich. 2004)

(*citing Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000)).  Defendant

bears the burden to show that a venue transfer is appropriate, but "mere assertions or

speculation, without evidence, are insufficient to meet this burden."  *Id.* at 714.  The

burden is a heavy one, and requires the moving party to show that the balance of

factors weighs strongly in favor of transfer.  *Steelcase, Inc. v. Smart Techs*, *Inc.*, 336

F.Supp.2d 714, 719 (W.D. Mich. 2004).  Finally, Plaintiff's choice of forum deserves

"foremost consideration," and should not be disturbed unless the balance of factors

strongly favors Defendant.  *West American Insurance Co. v. Potts*, No. 89-6091, 1990

U.S. App. LEXIS 12513, at *6 (6th Cir. July 25, 1990) (unpublished) (*citing Nicol v.

Koscinski*, 188 F.2d 537 (6th Cir. 1951)).

17

### 1.      Convenience of the Parties and Witnesses

Section 1404(a) provides for transfer of venue to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient. *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). In order to justify a transfer of venue, the balance of convenience must be strongly in favor of the moving party. *Holiday Rambler Corp. v. Am. Motors. Corp.*, 254 F.Supp. 137, 139 (W.D. Mich. 1966). A transfer is not appropriate if the result is merely to shift the inconvenience from one party to another. *Sullivan v. Tribley*, 602 F.Supp.2d 795, 800 (E.D. Mich. 2009).

Here, the convenience of the parties is neutral. CEE has not demonstrated that it would be less convenient for it to travel to Michigan for this litigation than for A&D to travel to California. The court recognizes that in this diversity action, one party can be placed at greater inconvenience with respect to travel time and expense than the other. However, where, as here, the result of a transfer would be to merely shift the inconvenience onto the other party, defendant has not met its heavy burden. *Sullivan*, 602 F.Supp.2d at 800.

Federal courts consider convenience of the witnesses to be "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a)." *Audi AG and Volkswagon of America, Inc. v. D'Amato*, 341 F.Supp.2d 734, 750 (E.D. Mich. 2004) (*citing MCNIC Oil & Gas Co., v. IBEX Resources Co.*, 23 F.Supp.2d 729, 739 (E.D. Mich. 1998)). In weighing the convenience of the witnesses, the location of key witnesses should be given more weight than the raw number of witnesses residing in a particular jurisdiction. *Id.* The moving party should generally provide each witness's name and the subject matter of

18

his or her anticipated testimony.  *Id.*

CEE asserts that its three key witnesses either live in California, or in the case of Jeffrey Beebe, a former A&D employee and Michigan resident, agree to participate in this litigation in California.  CEE's claim is disingenuous; it fails to consider that A&D may have other key witnesses, and that those witnesses might live in Michigan.  In fact, A&D claims that it has three key witnesses as well, all of whom reside in Michigan. Thus, the balance of conveniences with regards to witnesses is neutral, with perhaps a slight edge to the Michigan forum since four of the six key witnesses reside in Michigan. Clearly the balance of conveniences is not "strongly in favor of the moving party" so as to justify a transfer.

### 2.    Locus of the Operative Facts

CEE claims that "all facts concerning this case took place in California, not Michigan."  (Def's Br. Supp. At 17.)  A&D, on the other hand, claims CEE's assertion is "blatantly false."  A&D provides affidavits to show that business meetings with CEE regarding design and development took place in Michigan; that the products were developed and manufactured in Michigan; that negotiation for the contracts in question took place at least in part in Michigan; and, that the account receivable at A&D which CEE has not paid is located in Michigan.  (Pl's Br. Supp. Ex. 15-18.)  Considering that the facts are in dispute, the locus does not favor one venue over the other.  If the court takes the facts in the light most favorable to the non-moving party, the locus favors the Michigan venue.

### 3.    Location of Relevant Documents and Physical Evidence

19

A fundamental principle guiding this balancing test is that litigation should proceed in the place where the case finds its center of gravity. *Audi AG*, 341 F.Supp.2d at 751 (internal quotations and citation omitted). The location of documentary evidence is of little consequence in determining venue, but the location of physical evidence should be given more weight. "While 'the location of physical evidence such as the wreckage of a crashed plane ought to be given more weight in the balancing analysis under § 1404(a)', 'the location of documentary evidence is a minor consideration.'" *Id.* (*citing U.S. v. Cinemark USA, Inc.*, 66 F.Supp.2d 881, 890 (N.D. Ohio 1999)). Documents may easily be sent by mail, copied, or faxed to a remote location. *Cinemark*, 66 F.Supp.2d at 890.

CEE asserts that all of the documents and physical evidence are located in the Central District of California. A&D, on the other hand, claims that evidence of the purchase orders it received in Michigan, evidence of CEE's accounts in Michigan, and evidence of the work A&D performed in installing and commissioning equipment for CEE, are located in Michigan. CEE has not said that the presence of the physical evidence in its possession in California is indispensable to this litigation. Nor has CEE asserted that it is necessary for a jury to view any of the physical evidence, that the physical evidence could not be transported to Michigan, or that the condition of the physical evidence could not be presented to this Court through other means, such as video, photographs, reports, or testimony. Because "mere assertions or speculation, without evidence, are insufficient to meet [the burden to show that a venue transfer is appropriate]," CEE does not meet its heavy burden on this factor. *IFL Group*, 306 F.Supp.2d at 714.

20

### 4.     Weight Accorded Plaintiff's Choice of Forum

Since this action is no longer pending in A&D's chosen forum, which was state court, A&D's choice of forum is awarded less weight in the balancing process. Typically, courts give "great weight" to a plaintiff's choice of forum.  *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999).  However, where the case has been removed from plaintiff's original choice of forum, the weight that would normally be accorded to plaintiff's choice of forum is diminished.  *See Jamhour v. Scottsdale Ins. Co.*, 211 F.Supp.2d 941, 947 (S.D. Ohio 2002) ("A plaintiff's choice of forum is entitled to less weight when the case is removed to federal court because the plaintiff is no longer in his chosen forum, which was state court.").

### 4.     Conclusion

The balance of factors does not weigh strongly in favor of transfer.

### C.     DEFENDANT'S MOTION TO STAY PROCEEDINGS

"The power to stay proceedings is incidental to the power inherent in every federal court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  "The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."  *Id.* at 255 (quoted in *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. Of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)). The decision to stay proceedings rests with the sound discretion of the district court. *Ohio Envtl.* 565 F.2d at 396. [A]s between federal district courts...the general principle is

to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Often, federal courts use the first-to-file rule to determine which court should proceed to judgment when a substantially similar matter is pending in two federal courts. The first-to-file rule is a "well-established doctrine that encourages comity among federal courts of equal rank." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n. 8 (6th Cir. 2004)). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should *generally* proceed to judgment.'" *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Ass's, Inc.*, 16 Fed.Appx. 433, 437 (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)). The first-to-file rule is an equitable rule, and a discretionary one. *Id.* at 437. "Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Id.*

Although A&D filed this action first in Michigan state court, CEE filed its case first in federal court before removing the Michigan state court action to the Eastern District of Michigan. CEE argues that, because it was the first party to file in federal court, the action in the Eastern District of Michigan should be stayed pending the resolution of the action in the Central District of California. The first-to-file rule, however, is discretionary. This Court believes it would be inequitable to stay this proceeding when CEE chose to file duplicative litigation in California after having been served with the Complaint in the Michigan state court action. CEE's actions contradict the authority it cites in its brief,

22

that "the general principle is to avoid duplicative litigation," and that "the waste of judicial resources due to duplicative proceedings is plain[.]" (Def's Brf. Supp. at 19.)(citations omitted).  In addition, CEE's actions in waiting to remove the Michigan case to federal court until after it had filed its case in the Central District of California may constitute, "inequitable conduct, bad faith...and forum shopping." *Zide Sport Shop*, 16 Fed.Appx. at 437.

For these reasons, and because CEE cannot demonstrate a "clear case of hardship or inequity" in being required to go forward in Michigan, *Landis*, 299 U.S. at 255 (1936), CEE's request to stay these proceedings is denied.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative, for Transfer of Venue or Stay of Proceedings is **DENIED.**

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 10, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 10, 2009.

s/Linda Vertriest
Deputy Clerk

23